IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| WILLIAM RANDALL BLACKWELL, : | |
| : | |
| Plaintiff, : | |
| : | |
| VS. : | |
| : | 3: 11-CV-11 (CAR) |
| MICHAEL J. ASTRUE, : | |
| Commissioner of Social Security, : | |
| : | |
| Defendant. : | |
| : | |

**RECOMMENDATION**

Plaintiff herein filed this Social Security appeal on January 31, 2011, challenging the Commissioner's final decision denying his application for disability benefits, finding him not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). Jurisdiction arises under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

**LEGAL STANDARDS**

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 216 (11th Cir. 2007). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not reweigh

the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

Under the regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process. 20 C.F.R. § 404.1520. In Step One, the Commissioner determines whether the claimant is working. In Step Two, the Commissioner determines whether a claimant suffers from a severe impairment which significantly limits his ability to carry out basic work activities. At Step Three, the Commissioner evaluates whether the claimant's impairment(s) meet or equal a listed impairment in Appendix 1 of Part 404 of the regulations. At Step Four, the Commissioner determines whether the claimant's residual functional capacity will allow a return to past relevant work. Finally, at Step Five, the Commissioner determines whether the claimant's residual functional capacity, age, education, and work experience allow an adjustment to other work.

*Administrative Proceedings*

Plaintiff filed applications for disability insurance benefits and Supplemental Security Income benefits on January 3, 2006. (Tr. 23, 46, 310). His claims were denied initially and upon reconsideration. (Tr. 317-20, 322-24). A hearing was held before an Administrative Law Judge ("ALJ") in Athens, Georgia on January 22, 2009. (Tr. 23, 32). Thereafter, in a hearing decision dated February 10, 2009, the ALJ determined that Plaintiff was not disabled. (Tr. 23-30). The Appeals Council subsequently denied review and the ALJ's decision thereby became the final decision of the

Commissioner.   (Tr. 4-6).

*Statement of Facts and Evidence*

The Plaintiff was forty-six (46) years of age at the time of the hearing before the ALJ, and alleged disability since January 5, 2004, due to a work-related back injury. (Tr. 25, 103).   Plaintiff completed the seventh grade, and has past relevant work experience as a tire changer and a machine operator. (Tr. 28, 95).

As determined by the ALJ, Plaintiff suffers from the following severe impairment: epidural fibrosis status post laminectomy.   (Tr. 25).   The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment, and he remained capable of performing light work as follows:

> [T]he claimant has the residual functional capacity to perform light work generally in terms of being able to lift 30 pounds occasionally, but he is restricted against frequent or repetitive climbing of ramps or stairs, and against repetitive stooping, kneeling, crouching or crawling.   Further, the claimant needs a sit/stand option such that he is not required to maintain a single posture (sitting, standing, or walking) for more than 10 minutes continuously.

(Tr. 26).   Although Plaintiff could not return to his past relevant work, the ALJ considered the Plaintiff's age, education, work experience, and residual functional capacity, and applied the Medical-Vocational Guidelines to determine that Plaintiff remained capable of performing other jobs that existed in significant numbers in the national economy, and thus, was not disabled. (Tr. 28-30).

## DISCUSSION

Plaintiff alleges that the ALJ failed to properly consider Plaintiff's credibility and complaints of pain, give proper weight to Plaintiff's treating physician, and provide appropriate hypothetical questions. (Doc. 8).

*Plaintiff's Credibility*

Plaintiff alleges that the ALJ erred when he discredited Plaintiff's complaints of pain. (Doc. 8). If the Commissioner "finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain," then he must consider the claimant's subjective testimony of the symptoms. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

To determine if Plaintiff's statements of an alleged symptom are credible, the ALJ must consider the intensity, persistence, and limiting effect of the symptoms, using Plaintiff's testimony, including activities of daily living, and objective medical records as evidence. 20 C.F.R. § 404.1529(c). The ALJ must consider the record as a whole, including objective medical evidence, the individual's own statements about the symptoms, statements and other information provided by treating or examining physicians, psychologists, or other individuals, and any other relevant information. SSR 96-7p.

After discussing in detail the Plaintiff's testimony and subjective complaints, the ALJ determined that:

> [C]onsidering the criteria enumerated in the Regulations, Rulings and case law for evaluating the claimant's subjective complaints, the claimant's testimony was not persuasive to establish an inability to perform the range of work assessed herein. The location, duration, frequency, and intensity of the claimant's alleged symptoms, as well as precipitating and aggravating factors, are adequately addressed and accommodated in the above residual functional capacity. The claimant's daily activities are not credibly restricted to the extent that he would be precluded from the range of work assessed herein. The lack of support for the claimant's subjective complaints and functional limitations is not due to any unexplained symptomatology, but to the claimant's exaggeration of his complaints.

(Tr. 28).

Plaintiff alleges that the ALJ erred by failing to account for the objective medical evidence,

which demonstrates that Plaintiff's complaints of pain are credible. (Doc. 8). Initially, the ALJ stated that Plaintiff's complaints of pain were not due to unexplained symptoms. Thus, the ALJ found the medical evidence demonstrated that Plaintiff's back injury could have reasonably led to his complaints of pain. The ALJ, however, determined that the medical evidence did not support the Plaintiff's complaints of disabling pain.

The objective record shows that Plaintiff had a back injury and underwent surgery to attempt to correct the problem in April of 2004. (Tr. 293). After the surgery, in May of 2004, Plaintiff stated that he had some discomfort, but reported that he was walking two miles per day. (Tr. 290). By June of 2004, Plaintiff still reported discomfort, but had good strength, "including his right quadriceps muscle and right hip flexors." (Tr. 289). Plaintiff's bulk and tone were normal, and he had no pathological reflexes present. (Tr. 289). In the following years, Dr. Robert LeBlond, Plaintiff's treating physician, noted that Plaintiff's motor strength was 5/5, his sensation was intact, his deep tendon reflexes were equal, he had mild restricted range of motion, and his straight leg raising test was negative. (Tr. 184, 187, 209-212). Dr. LeBlond also observed that Plaintiff's strength was well preserved and his station and gait were intact. (Tr. 188).

The medical evidence also shows that Plaintiff's pain was controlled by pain medication, which Plaintiff reported caused no side effects. (*See* Tr. 181, 184, 187, 213). In 2008, Plaintiff reported that treatment had brought his pain from a 9 to a 3, on a scale of 1-10. (Tr. 185). Further, about eight months after Plaintiff's back surgery, Dr. LeBlond opined that Plaintiff could lift 30 pounds. (Tr. 216). The medical records also show that, following Plaintiff's back surgery, Plaintiff was stable and doing fairly well. (Tr. 181, 184, 185, 190).

Plaintiff also alleges that the ALJ incorrectly interpreted Plaintiff's testimony at the hearing before the ALJ. In fact, the ALJ incorporated some of Plaintiff's testimony into Plaintiff's residual

functional capacity assessment.  The ALJ stated that he relied on Plaintiff's testimony that Plaintiff could lift 30 pounds, though not repetitively, and could stand for 10 minutes and sit for 45 minutes at a time.  (Tr. 27).  The ALJ "further accommodated [Plaintiff's] need to not remain in one position for a significant amount of time." (Tr. 27).

The ALJ also found that Plaintiff reported being able to do daily activities such as light household chores, light meal preparation, and grocery shopping.  (Tr. 27-28).  Plaintiff testified that he sweeps, does a little vacuuming, goes shopping with a friend, and makes sandwiches for himself. (Tr. 335).  Plaintiff also testified that he drives to the grocery store and his mother's house, and his longest drive where he did not have to get out of the car was approximately 55 minutes.  (Tr. 334-35). The ALJ determined that the "ability to regularly engage in these daily activities is not indicative of someone with impairments so severe that all work activity would be precluded."  (Tr. 28).

The ALJ outlined the objective medical evidence that could reasonably lead to Plaintiff's complaints of pain.  The ALJ found that the objective medical evidence did not indicate that the back injury was causing disabling pain.  The ALJ also detailed the symptoms Plaintiff testified to having, and found that Plaintiff's physical impairments did not prevent him from performing light work with specific limitations.  (Tr. 27-28).   The ALJ considered Plaintiff's subjective accounts of symptoms and physical limitations, and did so pursuant to the governing rulings and regulations, specifically Social Security Ruling 96-7p.  The ALJ provided adequate and specific reasons for discrediting Plaintiff's subjective accounts, relying on the testimony and objective medical evidence that conflicted with Plaintiff's allegations of a disabling impairment.   As substantial evidence supports the ALJ's decision regarding Plaintiff's complaints of disabling pain, the ALJ did not err.

### *Treating Physician*

Plaintiff alleges that the ALJ failed to give proper weight to Dr. Robert LeBlond, Plaintiff's

treating physician, when determining Plaintiff's residual functional capacity. (Doc. 8). The determination of the residual functional capacity is an administrative assessment based on all the evidence of how Plaintiff's impairments and related symptoms affect his ability to perform work-related activities. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The regulations state that the final responsibility for assessing a claimant's residual functional capacity rests with the ALJ, based on all the evidence in the record. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c). Relevant evidence includes medical reports from treating and examining sources, medical assessments, and descriptions and observations of a claimant's limitations by the claimant, family, neighbors, friends, or other persons. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

When deciding the evidence, "[t]he testimony of the treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The Commissioner's regulations also state that more weight should be given to opinions from treating sources because they can provide a detailed look at the claimant's impairments. 20 C.F.R. § 404.1527(d)(2). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440. "Good cause" as to why the Commissioner did not rely on the treating source's opinion can exist when the physician's opinion was not supported by the record evidence, the evidence supported a contradictory finding, or the physician's opinion was conclusory or inconsistent with the physician's own medical records. *Id.*

Herein, it appears the ALJ did not give significant weight to Dr. LeBlond's August 2006 questionnaire or Dr. LeBlond's September 2006 letter. (Tr. 27). In the August 2006 questionnaire,

Dr. LeBlond opined that Plaintiff would need to take an unscheduled break every 15 minutes. (Tr. 199). Plaintiff's pain would be aggravated with prolonged sitting, standing, and walking; frequent lifting or carrying of 5 pounds or more, if bending over; and repetitive bending, stooping, twisting, and squatting. (Tr. 198).   Dr. LeBlond stated that Plaintiff's return to work was doubtful.   (Tr. 199). Further, on September 14, 2006, Dr. LeBlond wrote a letter to Plaintiff's attorney, Phillip Sartain. (Tr. 196-97). The letter stated that it is unlikely Plaintiff could return to the work force any time soon. (Tr. 196).

Dr. LeBlond's treatment records do not support Dr. LeBlond's 2006 questionnaire or letter. Initially, the ALJ states that he does give weight to Dr. LeBlond's residual functional assessment from January 2005, which stated that Plaintiff's work restrictions placed him in the light/medium category. (Tr. 216).   Dr. LeBlond stated that Plaintiff could not lift more than 30 pounds, could sit frequently, and stand and walk occasionally.   (Tr. 216).   It was recommended that Plaintiff avoid repetitive bending, squatting, and crawling.   (Tr. 216).   Dr. LeBlond determined that Plaintiff could not return to work at Hartwell Chevron as a mechanic.   (Tr. 216).

Dr. LeBlond's September 2006 letter states that Plaintiff's inability to work at that time was due to "limited work experience, need for training, several years' worth of deconditioning and the need for continued medical care concerning his back and leg." (Tr. 196).   Dr. LeBlond does not indicate Plaintiff is not capable of work simply because of his injuries.   Further, in December of 2008, Dr. LeBlond appears to add a qualifying statement to Plaintiff's work restriction when he notes that it is doubtful that Plaintiff "could return to any physically demanding work as strenuous as previous job." (Tr. 180).   Dr. LeBlond's 2008 assessment is in agreement with his 2005 residual functional assessment.

Dr. LeBlond's treatment notes also indicate that Plaintiff reported that his pain medication, Lortab, was keeping the pain under control and was keeping Plaintiff functional.   (Tr. 184, 187, 213). In December of 2008, Plaintiff reported that the pain medication brought his pain from a 9 to a 3, and Dr. LeBlond's notes stated that Plaintiff is doing fairly well, for the most part. (Tr. 184).

The ALJ determined that some of Dr. LeBlond's opinions in August and September of 2006 were inconsistent with his own medical records.   Specifically, the ALJ's decision not to give significant weight to Dr. LeBlond's August 2006 and September 2006 opinions that Plaintiff could not return to work is supported by substantial evidence, and the ALJ clearly articulated his reasoning for not relying on these two specific pieces of evidence.   Thus, the ALJ did not commit reversible error by not giving significant weight to Dr. LeBlond's August and September 2006 opinions.

***Vocational Expert's Testimony***

Plaintiff also asserts that the ALJ committed error by failing to present a complete hypothetical question to the Vocational Expert ("VE"), in that he failed to include Plaintiff's complaints of exertional and non-extertional impairments. (Doc. 8).

Once a claimant proves at Step Four that he can no longer perform his past relevant work, the burden shifts to the Commissioner to establish that other jobs exist in the national economy that the claimant can perform.   *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).   The testimony of a VE may provide the basis for a finding by the ALJ that Plaintiff can still perform other jobs at Step Five. *Id.*   "In order for a vocational expert's testimony to constitute substantial evidence [for a finding at Step Five], the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."   *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

Plaintiff appears to allege that since he has established that his credibility was not impeached,

the ALJ erred by failing to include the limitations Plaintiff testified about in the hypothetical questions posed to the VE. (Doc. 8). However, as explained above, the ALJ did not err by discrediting Plaintiff's subjective complaints of disabling pain. The ALJ determined that the evidence did not support all of Plaintiff's complaints of extertional and non-exertional impairments, and thus, was not required to include the discredited impairments in the hypothetical questions. *See Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("the ALJ [is] not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported).

The ALJ's RFC assessment of Plaintiff was based on substantial evidence, and the hypothetical question posed by the ALJ sufficiently encompassed Plaintiff's RFC. Therefore, the ALJ did not err when he did not pose hypothetical questions that included Plaintiff's discredited impairments.

## CONCLUSION

As the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g). Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable C. Ashley Royal, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 26th day of January, 2012.

s/ ***THOMAS Q. LANGSTAFF***
**UNITED STATES MAGISTRATE JUDGE**

llf